**BREEN OLSON & TRENTON, LLP**
John E Olson, Esq. SBN. 011649
Dennis M Breen, III, Esq. SBN. 005309
7047 E. Greenway Pkwy, Suite 250
 Scottsdale, AZ 85254
(602) 732-7272
John@botlawfirm.com
Dennis@botlawfirm.com
*Attorney for Debtor*

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Case No.: 2:12-bk-23477-SSC |
| ALAN J LIGHT AND BRENDA RICKI LIGHT, | Chapter 11 |
| DEBTORS. | HON. SARAH SHARER CURLEY |
| | **DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION DATED FEBRUARY 1, 2013** |
| | **Disclosure Statement Hearing Date: TBD Time: TBD** |

ALAN J LIGHT AND BRENDA RICKI LIGHT, Debtor(s), by and through undersigned counsel, Debtors and Debtor in Possession (the "Debtor"), hereby submit this DISCLOSURE STATEMENT dated FEBRUARY 1, 2013 for the PLAN OF REORGANIZATION dated FEBRUARY 1, 2013.

### *SECTION I*

*Introduction*

1.1. <u>Purpose of this Disclosure Statement:</u>

The Debtor commenced reorganization proceedings with the filing of a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code, as amended (the "Bankruptcy Code"). The purpose of this Disclosure Statement is to provide holders of claims against or interest in the Debtor with sufficient information about the Debtor and the Plan to enable holders of claims against or interest in the Debtor to make an informed judgment on the merits of the Plan and a decision whether to approve or reject the Plan.

Certain materials contained in this Disclosure Statement are taken directly from other readily accessible instruments or are digests of other instruments such as notes, contracts, leases, appraisals, or financial statements. While the Debtor has made every effort to retain the meaning of such other instruments or the portions quoted, you are urged that any reliance on the contents of such other instruments should be predicated on a thorough review of the instruments themselves.

THE PLAN ACCOMPANIES THIS DISCLOSURE STATEMENT AS "*EXHIBIT A*." THE DEFINITIONS CONTAINED IN THE PLAN APPLY TO THIS DISCLOSURE STATEMENT AND EACH RECIPIENT THEREOF IS URGED TO REVIEW THE PROVISIONS OF THE PLAN FULLY PRIOR TO REVIEWING THIS STATEMENT.

The Debtor believes the contents of this Disclosure Statement satisfies the requirements adopted by this Court in (citing the elements below from *In re A.C. Williams Co.*, 25 B.R. 173 (Bankr N.D. Ohio, 1982); and *In re Cardinal Congregate I*, 121 B.R. 760 (Bankr. S.D. Ohio, 1982)). Those elements are as follows:

1. The circumstances that gave rise to the filing of the bankruptcy petition;

2. A complete description of the available assets and their value;

3. The anticipated future of the Debtor;

4. The source of the information provided in the Disclosure Statement;

5. A disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

6. The condition and performance of the debtor while in Chapter 11;

7. Information regarding claims against the estate;

Case 2:12-bk-23477-SSC    Doc 33    Filed 02/01/13    Entered 02/01/13 17:03:43    Desc
Main Document    Page 2 of 34

8. A liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;

9. The accounting and valuation methods used to produce the financial information in the disclosure statement;

10. Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

11. A summary of the plan of reorganization;

12. An estimate of all administrative expenses, including attorneys fees and accountant's fees;

13. The collectability of any accounts receivable;

14. Any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

15. Information relevant to the risks being taken by the creditors and interest holders;

16. The actual or projected value that can be obtained from avoidable transfers;

17. The existence, likelihood and possible success of non-bankruptcy litigation;

18. The tax consequences of the plan; and

19. The relationship of the debtor with affiliates.


All of these factors are not relevant in all cases but each should be considered to make a determination as to whether it is material to the case at hand.


1.2. Confirmation Hearing and Voting Instructions: [after final approval of this Disclosure Statement]

The Bankruptcy Court has set   TBD_____, 2013 at TBD AM/PM for a hearing on the approval of the disclosure statement.  At the hearing the court has set TBD_____, 2013 for a hearing on the confirmation of the plan Claimants and interest holders may vote on the Plan by filling out and mailing the accompanying Ballot for Accepting or Rejecting the Plan to:

Breen Olson & Trenton, LLP

John Olson, Esq.

7047 East Greenway Parkway, Suite 250

Scottsdale, Arizona 85254

The claims bar date shall be set by the Court as the date for the hearing on the Disclosure statement, which will be prior to plan confirmation. The Bankruptcy Court may confirm only one plan in this case. The plan confirmed in the Bankruptcy Court must meet the requirements contained in the Bankruptcy Code. In case of any conflict between the disclosure statement and the Plan, the Plan controls. Only the Debtor or the Debtor's representatives may solicit your vote. The cost of any solicitation by the Debtor will be borne by the Debtor. No other additional compensation shall be received by any party for any solicitation other than as disclosed to the Bankruptcy Court.

    1.3.   Voting.

If you are in one of the classes of creditors or investors whose interests are affected by the Plan (see "Summary of the Plan" below), it is important that you vote. If you fail to do so, your rights may be jeopardized. To vote to accept or reject the Plan, creditors and investors of the Reorganized Debtor in any of the impaired classes (see the "Summary of the Plan" contained herein and the copy of the Plan attached hereto) should indicate their acceptance or rejection on the appropriate Ballot. A sample ballot is attached as Exhibit B. The actual voting Ballot will be mailed with the Plan after the approval of the Disclosure Statement. Any creditors or investors holding claims in more than one impaired class must file one Ballot for each such class. Additional Ballots may be obtained by proper written request to:

Breen Olson & Trenton, LLP

John Olson, Esq.

7047 East Greenway Parkway, Suite 250

Scottsdale, Arizona 85254

You are therefore urged to fill in, date, sign, and promptly mail the enclosed Ballot when it is furnished to you. PLEASE BE SURE TO PROPERLY COMPLETE THE FORM AND LEGIBLY IDENTIFY THE NAME OF THE CLAIMANT OR INTEREST HOLDER.

**EXECUTED BALLOTS MUST BE RECEIVED ON OR BEFORE THE RETURN**

1 **DATE SET FORTH IN THE BALLOT**.

2 SINCE MAIL DELAYS MAY OCCUR, IT IS IMPORTANT THAT THE BALLOT OR
3 BALLOTS BE MAILED OR DELIVERED WELL IN ADVANCE OF THE DATE SPECIFIED.
4 ANY BALLOTS RECEIVED AFTER THAT DATE MAY NOT BE INCLUDED IN ANY
5 CALCULATION TO DETERMINE WHETHER THE CREDITORS AND INTEREST HOLDERS
6 HAVE VOTED TO ACCEPT OR REJECT THE PLAN.

7 As a claimant or interest holder, your vote is important. The Bankruptcy Court cannot
8 consider Confirmation of the Plan until acceptance thereof has been obtained pursuant to the
9 affirmative vote of impaired claimants by classes who hold at least two-thirds (2/3) in amount and
10 more than one-half (½) in number of the allowed claims by class actually voting on the Plan. If an
11 impaired claimant or interest holder who is entitled to vote does not, such failure to vote will bear
12 upon the outcome.

13 Whether a creditor or interest holder votes on the Plan or not, or whether the creditor or
14 interest holder votes at all, such party will be bound by the terms and treatment set forth in the Plan
15 if the Plan is accepted by the requisite majorities of creditors and interest holders and is confirmed
16 by the Bankruptcy Court. Allowance of a claim or interest for voting purposes does not necessarily
17 mean that all or a portion of the claim or interest will be allowed or disallowed for distribution
18 purposes.

19 Following acceptance, the Bankruptcy Court will hold a hearing on the confirmation of the
20 Plan and will enter an Order of Confirmation with respect to the Plan if it finds that, among other
21 things, all payments to be made by the Debtor in connection with the case or Plan have been
22 disclosed to the Bankruptcy Court, the identity and affiliation of post-confirmation management of
23 the Reorganized Debtor has been fully disclosed, each class of claimants and interest holders has
24 accepted the Plan or is not impaired by the provisions thereof, and that confirmation is not likely to
25 be followed by the liquidation or need for further financial reorganization of the Reorganized
26 Debtor.

27 In the event that the requisite acceptance of impaired classes of claims and interests are not
28 obtained, pursuant to Section 1129(b)(1) of the Bankruptcy Code, the Bankruptcy Court may

nevertheless confirm the Plan, upon the request of the proponent of the Plan, if the Bankruptcy Court finds that the Plan does not discriminate unfairly and accords fair and equitable treatment to the class rejecting it. At the hearing on confirmation of the Plan, the Bankruptcy Court will hear any timely filed objections from a claimant or interest holder to confirmation of the Plan.

THE ONLY REPRESENTATIONS THAT ARE AUTHORIZED OR WHICH MAY BE MADE CONCERNING THE DEBTOR, THE VALUE OF ITS ASSETS, OR THE REORGANIZED DEBTOR, ARE THE REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT. EXCEPT AS NOTED, THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECTED TO AN AUDIT BY AN INDEPENDENT CERTIFIED PUBLIC ACCOUNTANT. ALL FINANCIAL RECORDS OF THE DEBTOR ARE MAINTAINED ON A CASH BASIS. ALL EXPENSES AND INCOME ARE ON A CASH BASIS. FOR THAT REASON, THE DEBTOR IS NOT ABLE TO WARRANT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT INACCURACY. HOWEVER, GREAT EFFORT HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY PRESENTED. NO REPRESENTATIONS OR ASSURANCES CONCERNING THE DEBTOR (INCLUDING, WITHOUT LIMITATION, ITS FUTURE BUSINESS OPERATIONS) OR THE PLAN ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE BY ANY PERSON TO SECURE YOUR VOTE WHICH ARE OTHER THAN HEREIN CONTAINED SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO, IN TURN, SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED HEREIN. NEITHER DELIVERY OF THIS DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS

1 MADE IN CONNECTION WITH THIS DISCLOSURE STATEMENT SHALL, UNDER ANY
2 CIRCUMSTANCES, CREATE ANY IMPLICATION THAT THERE HAS BEEN NO CHANGE
3 IN THE FACTS SET FORTH HEREIN SINCE THE DATE THIS DISCLOSURE STATEMENT
4 AND THE MATERIALS RELIED UPON IN PREPARATION OF THIS DISCLOSURE
5 STATEMENT WERE COMPILED. THIS DISCLOSURE STATEMENT MAY NOT BE RELIED
6 ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN,
7 AND NOTHING CONTAINED IN IT SHALL CONSTITUTE, OR BE DEEMED CONCLUSIVE
8 ADVICE ON, THE TAX OR OTHER LEGAL EFFECTS OF ANY REORGANIZATION ON
9 HOLDERS OF CLAIMS OR INTERESTS IN CONNECTION WITH SUCH
10 REORGANIZATION.

11      THIS DISCLOSURE STATEMENT HAS BEEN CONDITIONALLY APPROVED BY
12 ORDER OF THE BANKRUPTCY COURT, DATED_____, AS CONTAINING
13 INFORMATION OF A KIND AND IN SUFFICIENT DETAIL TO ENABLE A REASONABLE,
14 HYPOTHETICAL INVESTOR TO MAKE AN INFORMED JUDGMENT CONCERNING THE
15 PLAN. THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT,
16 HOWEVER, DOES NOT CONSTITUTE A RECOMMENDATION BY THE BANKRUPTCY
17 COURT EITHER FOR OR AGAINST THE PLAN.

18      IN ORDER TO BE CONSIDERED FOR PURPOSES OF SATISFYING THE
19 BANKRUPTCY CODE REQUIREMENTS, YOUR BALLOT MUST BE RECEIVED AT THE
20 ADDRESS INDICATED ON THE BALLOT NO LATER THAN 5:00 P.M. ON THE __ DAY OF
21 _____. A BALLOT ACCOMPANIES THIS DISCLOSURE STATEMENT FOR
22 USE IN VOTING OF THE PLAN ONCE IT IS APPROVED BY THE COURT.

23

24                              **SECTION II**

25          *History of Debtor and Factors Leading to the Filing of the Chapter 11*

26     2.1.     History of the Debtor and Events Leading to Filing Chapter 11.

27     The debtor is a self-employed real estate investment manager and accountant. The Debtor
28 manages numerous LLC's, which have investments in commercial properties. These LLCs are

Page **7** of **34**
Case 2:12-bk-23477-SSC   Doc 33   Filed 02/01/13   Entered 02/01/13 17:03:43   Desc
Main Document   Page 7 of 34

1 | detailed in section 4.10. In the current economic environment the residential and commercial

2 | property sectors continue to suffer specifically the retail and office markets. Many of the Debtor's

3 | LLCs own commercial retail property. Over the last four years, the Debtor has struggled to keep the

4 | properties solvent. This was not possible in several instances and properties have been foreclosed.

5 | The detailed account of the various LLC interests in 4.10 identifies the various properties that are

6 | insolvent or have already been foreclosed. The Debtor personally guaranteed some of the loans on

7 | the foreclosed commercial property. There are three creditors that have or are in the process of

8 | obtaining Judgments against the Debtor and a fourth that is expected. The combination of the

9 | Debtor's own personal debt and the prospect of garnishment from these Judgment Creditors led the

10 | Debtor to the decision to file bankruptcy.

11 |    2.2    Current Management.

12 |    The real estate rental, commercial real estate management, and accounting service

13 | businesses are operated, and will continue to be operated, by the Debtor.

14 |    2.3    Properties of the Debtor/Assets of the Estate.

15 |    The debtor has attached as Exhibit D a list of current assets [tangible and intangible, exempt

16 | and non-exempt] of the debtor at estimated current value. The sources of the values of the real

17 | estate properties are reasoned and calculated estimates by the debtor based on his long experience in

18 | commercial real estate and accounting, appraisals, and broker opinions of value. A list of the

19 | Debtors' assets and what liens, if any encumber them, are listed on Exhibit D.

20 |    2.4.    Business of Debtor.

21 |    The business of the Debtors, Mr. Light does residential real estate rental, Commercial Real

22 | Estate Management, and accounting services. Mrs. Light is employed by Melmed Center, PLLC

23 | where she is a special education advocate and Mrs. Light owns Light Educational Advocacy, LLC,

24 | which is an LLC she utilizes to provide education consulting services. The income from these

25 | activities took a severe downturn, but has now stabilized.

26 |    2.5.    Plan of Reorganization.

27 |    The Debtor has filed a Plan that recognizes the reality of the market and the need to

28 | restructure debt on the Debtor's one rental property and cure the other defaults over time. With

restructured debt reflecting the current property value there will be sufficient collected rents and income to fund the Debtor's operations. Additionally, the Plan will provide for the payment for the value of any non-exempt assets over the next five years.

The Plan is paying the allowed secured claim of the first mortgage holder on the rental property. There are no secured claims on personal property.

Additionally, pursuant to 11 U.S.C. § 1129(a)(15), the Plan provides; "the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in § 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer." As shown in **Exhibit C**, the Liquidation Analysis shows non-exempt assets of $0.00. Additionally, unless a senior class is paid in full no junior class shall receive or retain any property except as provided for individuals in § 1129(b)(2)(B), which allows individuals to retain certain assets earned post confirmation. For the calculation of Disposable Income under § 1325(b)(2), which addresses § 1129(a)(15), see the attached **Exhibit E (Income, Expense, and Net Disposable Income) & F (Summary of Classes)**. The result of the calculation is a projected Net Disposable Income of $188.38 per month and the payment to the unsecured creditors in Class Ten under the plan is $11,302.65, which is $188.38 per month. This payment to the unsecured creditors equals the disposable income and exceeds the liquidation value. The unsecured creditors would receive nothing in a liquidation. See the liquidation analysis attached hereto as **Exhibit "C"** and the list of assets and estimated value attached hereto as **Exhibit "D."**

### 2.6. Secured Obligations as of the Date of Filing.

The following is an estimate by the Debtor of the outstanding secured obligations owed as of the date of the Petition. The Debtor does not have a vehicle loan or any other secured loans besides those mentioned below.

| Secured Creditor | Type of Encumbrance | Estimated Amount Due at Filing | Property | Status of Property | Intent |
|---|---|---|---|---|---|
| HSBC | 1st Mortgage | $388,000.00 | 11083 E Acoma Dr., Scottsdale, Arizona | Primary Residence | Retain |
| Charles Lindgren Defined Benefit Plan | 2nd Mortgage | $405,983.56 | 11083 E Acoma Dr., Scottsdale, Arizona | Primary Residence | Stipulated Modification |
| Coastline | 3st Mortgage | $715,000.00 | 11083 E Acoma Dr., Scottsdale, Arizona | Primary Residence | Strip Lien |
| Bank of America, N.A. | 1st Mortgage | $519,442.00 | 3853 Reklaw Dr., Studio City CA 91604 | Rental | Cram down Lien and Retain |

### 2.7. Current Litigation or Seizure.

The debtor is not currently engaged in any litigation other than that which was disclosed in the statement of financial affairs.

### 2.8. Plan of Repayment.

Under the Plan of Reorganization, the plan of repayment is to pay, over a 60 month period, the Allowed Secured Claims on the encumbered assets utilizing the income generated by those assets. Additionally, the Debtor will pay to the Class Eleven unsecured creditors who file timely proofs of claim a Pro Rata share of the $11,302.65 paid to that class. At the end of the Plan period the Debtor will seek a discharge of the balance of the unsecured claims and will continue making the Allowed Secured Claims. Under a Chapter 7 liquidation analysis, the unsecured creditors would receive approximately $0.00. For a detailed Liquidation analysis, see **Exhibit C** and Payments to unsecured creditors Class Ten in **Exhibit E & Exhibit F**.

Case 2:12-bk-23477-SSC    Doc 33    Filed 02/01/13    Entered 02/01/13 17:03:43    Desc
Main Document    Page 10 of 34

## SECTION III

### Income Projections of the Property and Debtor

The debtor is a self-employed accountant and property manager. The Joint Debtor receives a salary from Melmed Center, PLLC. The Debtor estimates that the net income from the business activities and salary will be $105,814.61 as shown on Exhibit E. As with any self-employed professional the actual income may vary and may be seasonal such as accounting income.

A *pro forma* statement of the anticipated income and expenses is in Exhibit E attached hereto.

## SECTION IV

### Summary of Plan of Reorganization

THE FOLLOWING IS A BRIEF SUMMARY OF CERTAIN PROVISIONS OF THE PLAN AND SHOULD NOT BE RELIED ON FOR VOTING PURPOSES. THE SUMMARY DOES NOT PURPORT TO BE COMPLETE. CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE PLAN ATTACHED HERETO AS EXHIBIT "A." CREDITORS AND INTEREST HOLDERS ARE FURTHER URGED TO CONSULT WITH COUNSEL IN ORDER TO UNDERSTAND THE PLAN MORE FULLY.

4.1.   Plan:

Due to the current market situation in rental real estate in California, and in much of the country, all real property secured creditors will not be paid in full and it is anticipated a deficiency will occur with respect to all real property liens unless otherwise indicated. Additionally, the unsecured creditors will be not paid the full amount of their claims. The Debtor's future income will be the source for the Debtor to make the cash payments at Confirmation of the Plan and to continue in business. Any new monies will also be used as operating reserves, to cover any operating shortfalls, which the Debtor may encounter. These proceeds, in conjunction with the Property's revenues, will provide the necessary funds for the Debtor to pay creditors under the Plan significantly more than they would receive under a liquidation.

Case 2:12-bk-23477-SSC    Doc 33    Filed 02/01/13    Entered 02/01/13 17:03:43    Desc
Main Document    Page 11 of 34

4.2.    Segregation of Classes:

The Plan further proposes to segregate the creditors and interest holders of the Debtor into separate classes. Of these classes, allowed administrative and priority claimants including priority tax claimants, but exclusive of those referenced in § 507(a)(7) and (8) will receive payments of 100% of their respective claims, in cash, within 180 days of Confirmation. The tax payments due under § 507(a)(8) will be paid in equal monthly installments until paid in full within 60 months from the date of filing the petition.

Generally, all Administrative Claims will be paid in full in cash as stated in the Plan. The Debtor shall retain all of the assets and properties unless otherwise indicated.

4.3.    Treatment of Secured Claims:

Under the Plan, the Debtor proposes to retain the real estate rental properties utilized by them for the Debtor's business unless otherwise noted. The 1st mortgages on each property will be paid in accordance with the terms of the restructured note unless otherwise indicated. All second mortgages will be wholly unsecured and paid in accordance with unsecured creditors unless otherwise indicated.

Any stipulation entered into between the secured creditor and the Debtor shall supersede any treatment of creditors that may be set forth in the Debtor's Plan.

4.4.    Cash Collateral Litigation:

A cash collateral motion for the 3853 Reklaw Dr., Studio City CA 91604 rental property was not filed because Debtor's counsel and Creditor's counsel are in amicable negotiations for stipulation.

4.5.    Description of Assets - Values:

The estimated debts owed to secured creditors with properties valued at market is shown on **Exhibit D**. If there is a discrepancy between the value shown in the Disclosure Statement and Plan, then the plan is the controlling document. Upon objection to the Plan, if no stipulated agreement is reached, a valuation hearing will be requested to address the valuation issue and the amount determined at that hearing will be used for Plan and Disclosure Statement purposes.

4.6.    Anticipated Future of Debtor - Competitive Market:

1    In addition to the Debtor's salary the Debtor will continue to operate the rental property, real
2    estate property management, and accounting services business. Market rents and property prices
3    and the economy as a whole may be stabilizing.

4        4.7.    Source of Information:

5        The source of information for this disclosure statement had come from the debtor, and
6    professionals employed by the Debtor.

7        4.8.    Cash Collateral Agreement:

8        None

9        4.9.    Information Regarding Claims Against The Estate:

10       The secured creditors hold or previously held notes secured by Deeds of Trust on the various
11   properties of the Debtor. These notes are estimated in aggregate as of petition date to exceed
12   $2,000,000. The Debtor believes all real property secured creditors will not be fully secured and a
13   portion of their claim will be unsecured unless otherwise indicated. Taxes, if owed, including ad
14   valorem real property taxes on the retained properties will be paid in cash at confirmation of the
15   Plan or over the 60 month Plan with the applicable statutory rate of interest.

16       4.10.   Liquidation Analysis:

17       A liquidation analysis, valuing assets of the debtor in a Chapter 7, is attached as **Exhibit**
18   **"C"**. This liquidation analysis includes the nonexempt assets of the Debtor. The analysis includes
19   all of the Debtor's non-exempt assets and shows that upon liquidation, unsecured non-priority
20   creditors would receive $0.00, while under the Plan they receive $11,302.65.

21       The debtor owns varying percentage interests in numerous Limited Liability Companies,
22   which are summarized in the two tables below along with a description of why they are believed to
23   be of a Zero value. These entities primarily owned real estate, which has been foreclosed, or real
24   estate of a current market value less than the balance of the loan against the property within the
25   LLC. The market value of an interest in over encumbered real estate that is or may be at risk for
26   foreclosure is assumed to be Zero in all cases.

27
28

| Entity and Ownership Percentage | Description or disposition of Assets | Market Value |
|---|---|---|
| Hattiesburg Highway 49, LLC 14% | Retail strip center | The LLC interest has no market value. HH49 owns 81% of a Shopping Center that has a Property value of $1,800,000 & a loan of $1,908,000. |
| McKinney Dallas Square Investors LLC 13% | Retail strip center | The LLC interest has no market value. Property value is $1,200,000. Loan is $1,517,000 |
| Londonderry Woodlands Retail, LLC 14% | Retail strip center | The LLC interest has no market value. Property value is $1,200,000. Loan is $1,753,000 |
| Custer Place Investors LLC 6% | Retail strip center | The LLC interest has no market value. Property value is $1,300,000. Loan is $1,700,000 |
| SB Building, LLC 50% | Tenant in Common in Custer Place | See above |
| Houston Fry Investors, LLC 8% | Retail strip center | The LLC interest has no market value. Property value is $2,300,000. Loan is $2,529,000 |
| Aquila Office Building SE LLC 37% | Office building where Mr Light pays rent | The LLC interest has no market value. Property value is $200,000. Loan is $352,000 |
| Shreveport Westwood Investors, LLC 8% | Neighborhood shopping center | The LLC interest has no market value. Property value is $4,300,000. Loan is $4,525,000 |
| Mineral Wells Investors, LLC 10% | Retail strip center | The LLC interest has no market value. Property value is $900,000. Loan is $1,060,000 |
| SBABL Holdings, LLC 44% | Neighborhood shopping center | The LLC interest has no market value. SBABL owns 2% of a Shopping Center that has a Property value of $3,000,000 & a loan of $4,680,000 |
| ValVistaRay Pads Investors, LLC 12% | Retail strip center | The LLC interest has no market value. VVR owns 36% of a Shopping Center that has a Property value of $700,000 & a loan of $889,000 |
| All Insurance Brokers, LLC 100% | This entity is the vehicle for Mr. Light's insurance services there is no stream of residuals and no assets. | The only value is Mr. Light. This entity has no marketable value. |
| Lighthouse Management Services, LLC 100% | This entity is the vehicle for Mr. Light's property management services there are no assets. | The only value is Mr. Light. This entity has no marketable value. |
| Light Educational Advocacy Services, LLC 100% | Professional Services entity for Brenda Light. No Assets. | The only Value is Mrs. Light. This entity has no marketable value. |

| Entity and Ownership Percentage | Description or disposition of Assets | Market Value |
|---|---|---|
| Dysart Investors, LLC | Foreclosure | No Value. Lost property. |
| 67th Ave Lower Buckeye Investors LLC | Foreclosure | No Value. Lost property. |
| Aquila Office Building SW LLC | Foreclosure | No Value. Lost property. |
| Aquila Office Building NW LLC | Foreclosure | No Value. Lost property. |
| Hattiesburg Turtle Creek LLC | Foreclosure | No Value. Lost property. |
| Petersburg BL LLC | Foreclosure | No Value. Lost property. |
| Grand Prairie Mayfield Investors LLC | Foreclosure | No Value. Lost property. |
| 67th Ave Lower Buckeye DS LLC | Foreclosure | No Value. Lost property. |
| Lighthouse Management Services Sole Proprietorship | Closed Down | No Value. |
| Fishers Crossing Investors, LLC 12% | Foreclosure | No Value. Lost property. |
| Flight 041, LLC 33% | Foreclosure | No Value. Lost property. |
| Parkway Village Investors, LLC 12% | Foreclosure | No Value. Lost property. |
| Parkway Village DS, LLC 21% | Foreclosure | No Value. Lost property. |
| SLF, LLC 5% | Foreclosure | No Value. Lost property. |

4.11.  Future Management of the Debtor:

Debtor plans to continue to earn a salary, operate the rental property, real estate property management, and accounting services business and utilize their earnings to make the plan payments.

4.12.  Non-Bankruptcy Litigation:

Debtor anticipates no non-bankruptcy litigation other than that which was disclosed in the Statement of Financial Affairs.

4.13.  Avoidable Transfers:

There are no avoidable transfers that the Debtors are aware of.

## SECTION V

*Classification and Treatment of Claims and Interests*

Claim Amounts:

Because certain claims against the Debtor may be unknown or of undetermined amounts, the amount of claims specified in this Disclosure Statement reflect only the Debtor's best estimate at this time of the amount due.  In addition, the amounts of the claims specified in this Disclosure

Statement do not include, for example, claims arising from the rejection of certain executory contracts and other contingent or unliquidated claims arising against the debtor. Disputed or unliquidated claims will be adjusted after confirmation of the plan and prior to closing the case.

Effective Date of the Plan:

The "Effective Date" of the Plan is important in determining when performance of many of the Debtor's obligations under the Plan is due. The Effective Date is defined in the Plan as: Effective Date shall mean the later of (a) the first business day following the 60th day after entry of the Court of an order confirming this Plan, or (b) the first business day after such order has become final and unappealable; provided however, no appeal of said order is pending; provided further, the Debtor may waive the condition that no appeal of the order of confirmation be pending by a writing duly executed by the Debtor and filed with the Court on or before the date which but for the pendency of appeal would become the effective date of the Plan, and in the event that said condition is timely waived by the Debtor, the Plan shall become effective as provided herein notwithstanding the pendency on said date of an appeal or appeals; in the event that said condition is not timely waived, the Plan shall become effective on the first business day after an appeal is no longer pending.

Funding Plan of Reorganization:

Debtor shall fund its plan of reorganization from salary, ongoing business operations, and disposable income, if required.

Classification:

The Plan divides claims against the Debtor into multiple separate classes that the Debtor asserts are in accordance with the Bankruptcy Code. Unless otherwise expressly stated in the Plan, distributions to holders of allowed claims are in full satisfaction of their allowed claims. All claims against the Debtor arising prior to confirmation will be discharged by completion of the Plan to the extent that such claims are dischargeable under the § 1141(d). All of the creditors bound by the Plan shall be required to execute such documents as are reasonably required to reflect the Plan changes on the creditors' claims, and implement and produce accounting records to reflect such changes. For the purpose of the Plan, claims are classified and treated as follows:

Case 2:12-bk-23477-SSC    Doc 33    Filed 02/01/13    Entered 02/01/13 17:03:43    Desc
Main Document    Page 16 of 34

5.1. Class One - Administrative Claims

    5.1.1. Classification: Class One consists of all claims for the cost of administration of the Debtor's bankruptcy estate. Included in this Class are all claims for administrative expenses entitled to priority under Bankruptcy Code § 507(a)(1), such as professional fees and costs, as approved by the Bankruptcy Court for attorneys, accountants, and other professional persons employed by the Debtor, and all actual and necessary expenses of operating the Debtor's business pursuant to § 503(b), including without limitation, all fees charged against the Debtor's business pursuant to Chapter 123 of Title 28, United States Code. Administrative claims shall include any post petition taxes due any taxing authority on the Effective date and not paid through the sale of the property. As of January 30, 2013, the attorney's fees total approximately $37,000 less payments made prior to filing of $23,000.

    5.1.2. Impairment: Not impaired.

    5.1.3. Treatment: The Plan provides for the payment, in full, of all Allowed Administrative Claims on the later of the Effective Date or the date upon which such Claims become Allowed Claims, or as otherwise ordered by the Bankruptcy Court or agreed to by claimants. Class One claims will be paid from assets of the estate or from "new monies" received by the Debtor from its business operations. The Debtor currently estimates that the Class One claims may exceed $37,000 consisting primarily of costs other than attorney fees owed to Debtor's counsel and will include post-petition administrative expenses and may include fees due the United States Trustee, and post-petition payables for business operations. The Debtor has been or will be paying some of its post-petition operating expenses incurred in the ordinary course of business as approved by the Court. Such payments will reduce the remaining amount of Administrative expenses as approved by the Court and due on the Effective Date of the Plan. The Debtor will continue to pay all fees due the U. S. Trustee post-confirmation and to file any reports required by law. The Debtor

believes the fees owed to the United States Trustee are current.

5.2.   Class Two - Employee Priority Claims Classification: Class Two consists of allowed claims arising under Bankruptcy Code Section 507(a)(3) and (4) including claims for wages and vacation pay earned by employees of the Debtor within 90 days before the filing of the bankruptcy petition. The Debtor estimates there are no claims in this class.

5.2.2.   Impairment: Not impaired.

5.2.3.   Treatment: The Plan provides for the payment in cash, in full, of all allowed Class Two claims on the later of the Effective Date or the date upon which such claim becomes an allowed claim.

5.3.   Class Three - Claims of Governmental Units

5.3.1.   Classification: Class Three claims consists of all allowed claims of the United States Internal Revenue Service ("IRS") and/or State of Arizona, and/or other government agency which are entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code except ad valorem taxes. There are no such claims.

5.3.2.   Impairment: Class Three is not impaired.

5.3.3.   Treatment: In accordance with § 1129, each holder of a Class Three allowed claim shall retain its lien or claim. The Claim shall be paid, in regular installments, with interest, over period ending not later than five years after the date of the order for relief. Interest on the IRS claim shall be at the rate in effect on the Effective Date of the Plan, as set forth in I.R.C. § 6621 and § 6622 and shall be compounded daily.

5.4.   Class Four Secured Prepetition Ad Valorem Real Property Tax Claims

5.4.1.   Classification: Class Four shall consist of pre-petition allowed Ad Valorem Real Property Tax Claims of Los Angeles County and Maricopa

Case 2:12-bk-23477-SSC    Doc 33    Filed 02/01/13    Entered 02/01/13 17:03:43    Desc
Main Document    Page 18 of 34

County, which are secured by liens on real property. The Debtor estimates that claims will be None

5.4.2. Impairment: Class Four is not impaired.

5.4.3. Treatment: This claim shall be paid in full at confirmation. The Class shall retain its lien or claim until paid and be entitled to interest at the statutory rate.

5.5. Class Five Secured Ad Valorem Real Property Tax Claims

5.5.1. Classification: Class Five shall consist of post-petition allowed Ad Valorem Real Property Tax Claims of Maricopa County, which are secured by liens on real property. The Debtor estimates that claims will be $6,463.44 Per year

5.5.2. Impairment: Class Five is not impaired.

5.5.3. Treatment: This claim shall be paid in full upon no later than 30 days from the due date of the tax. The Class shall retain its lien or claim until paid and be entitled to interest at the statutory rate.

5.6. Class Six Secured Ad Valorem Real Property Tax Claims

5.6.1. Classification: Class Six shall consist of post-petition allowed Ad Valorem Real Property Tax Claims of Los Angeles County, which are secured by liens on real property. The Debtor estimates that claims will be $10,747.44 Per year

5.6.2. Impairment: Class Six is not impaired.

5.6.3. Treatment: This claim shall be paid in full upon no later than 30 days from the due date of the tax. The Class shall retain its lien or claim until paid and be entitled to interest at the statutory rate.

5.7. Class Seven – Claim of HSBC Mortgage Corp USA on 11083 E Acoma Dr.,

Scottsdale, Arizona ("HSBC")

5.7.1.  Classification: Class Seven consists of the allowed secured claim of HSBC to the extent of the value of the secured creditor's interest in the Debtor's interest in the real property commonly known as 11083 E Acoma Dr., Scottsdale, Arizona. The amount of the claim at the time of filing was $388,973.00. Class Seven is fully secured.

5.7.2.  Impairment: Class Seven is unimpaired.

5.7.3.  Treatment: The Debtor will continue to make the monthly mortgage payment consisting of interest and escrows of $2,547.73 as adjusted under the terms of the original note and deed of trust.

5.8.  Class Eight– Claim of C Lindgren Defined Benefit Pension Second Position Lien on 11083 E Acoma Dr., Scottsdale, Arizona ("CLDB")

5.8.1.  Classification: Class Eight consists of the allowed secured claim of CLDB to the extent of the value of the secured creditor's interest in the Debtor's interest in the real property commonly known as 11083 E Acoma Dr., Scottsdale, Arizona. The amount of the claim at the time of filing according to the Proof of Claim 2 is estimated to be $405,983.56. Class Eight is under secured.

5.8.2.  Impairment: Class Eight is impaired.

5.8.3.  Treatment: The debtor has reached an agreement with CLDB, the terms and conditions of that agreement match the treatment set forth herein. The secured Creditor CLDB has agreed to modify the Second Position Lien to the amount of the value according to the Broker Opinion of value in excess of the First Mortgage and an unsecured claim for the balance. The value stated in the Broker Opinion of Value dated January 4, 2013 is $765,000, attached as Exhibit G, which reflects the current market value of the assets securing CLDB which debtor believes is less than the obligations due the Class Seven and Eight creditors. The secured creditor has agreed to modify the Class Eight creditor's secured claim to the current value

of the property that is in excess of the first position lien amounting to approximately $376,027 constituting CLDB's Secured Second Position lien on the Effective Date. The lien shall be paid an interest only payment at 2.5%, which result in a monthly payment of $783.39 for fifteen years with the full amount of the claim due and payable fifteen years from the effective date. All arrearages will be treated as unsecured claims including all fees and costs of the lender prior to plan confirmation. All other terms and conditions of the loan evidenced by Deed of trust and Note shall remain the same except as noted herein. The Debtor shall pay continue to pay property taxes and insurance with the First Lien Payment. The allowed secured claim of CLDB shall be paid and secured by existing liens on the collateral as follows:

5.8.3.1. The allowed secured claim shall reflect the amount of the secured portion of the claim and shall accrue interest from the Effective Date of the Plan at the rate set forth above pursuant to the terms of the Note and Deed of Trust not inconsistent with this Plan. The Class Eight creditor will not be entitled to any interest on its allowed secured claim from the Petition date to the Confirmation date.

5.8.3.2. The first monthly installment, the First Payment Date, reflecting the new amount due shall be due 10 days after the Effective Date of the Plan and subsequent monthly installments shall be due on the same day of each subsequent month until the full claim is due.

5.8.3.3. The note of the Class Eight creditor shall continue to be secured by its current position lien on the collateral. No other security for payment of the allowed claim which creditor had at the Petition Date other than the lien above described which encumbers the collateral of creditor shall be retained post-confirmation.

5.8.3.4. The Debtor and the Class Eight creditor shall agree to execute such modifications to the existing note and deed of trust as are reasonably

1  necessary to reflect the provisions of the plan treatment for this creditor, as

2  determined by the Court.

3

4  5.9.  Class Nine – Claim of Pacific Western Bank, N.A., Third Position Lien on 11083 E

5  Acoma Dr., Scottsdale, Arizona ("PWB")

6  5.9.1.  Classification: Class Nine consists of the allowed secured claim of PWB to

7  the extent of the value of the secured creditor's interest in the Debtor's interest in the

8  real property commonly known as 11083 E Acoma Dr., Scottsdale, Arizona. The

9  amount of the claim at the time of filing was $715,000.00. Class Nine is wholly

10  unsecured.

11  5.9.2.  Impairment: Class Nine is impaired.

12  5.9.3.  Treatment: The allowed amount of the creditor's secured claim will be the

13  lesser of value of the creditor's interest in the debtor's interest in the properties

14  securing the creditor's claim as determined under Section 506, or the allowed

15  amount of the creditor's claim. The Debtor has obtained a valuation of the

16  collateral, which reflects the current market value of the assets securing 11083 E

17  Acoma Dr., Scottsdale, Arizona. After deducting the amount of the First and

18  Second position liens from the value of the collateral there is no security available

19  for the Class Nine creditor. The debtor proposes to treat the Class Nine creditor as a

20  Class Eleven General Unsecured claim. The Class Nine creditor's security interest

21  is removed and the lien stripped from the collateral.

22

23  5.10.  Class Ten – Claim of Bank of America, N.A. First Position Lien on 3853 Reklaw

24  Dr., Studio City CA 91604 ("BAC")

25  5.10.1. Classification: Class Ten consists of the allowed secured claim of BAC to

26  the extent of the value of the secured creditor's interest in the Debtor's interest in the

27  real property commonly known as 3853 Reklaw Dr., Studio City CA 91604. The

28  amount of the claim at the time of filing is estimated to be $519.442. Class Ten is

under secured.

5.10.2. Impairment: Class Ten is impaired.

5.10.3. Treatment: In the event the debtor is able to reach an agreement with BAC, the terms and conditions of that agreement will supersede the treatment set forth herein. Under Section 506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtors interest in the collateral and an unsecured claim for the balance, if any, unless the creditor, if eligible, elects to have its claim treated as fully secured. The allowed amount of the creditor's secured claim will be the lesser of value of the creditor's interest in the debtor's interest in the properties securing the creditor's claim as determined under Section 506, or the allowed amount of the creditor's claim agreed to by the creditor and debtor or determined by the Court. The Debtor has obtained a valuation of the collateral of $245,000.00, attached as Exhibit H, which reflects the current market value of the assets securing BAC which debtor believes is less than the obligations due the Class Ten creditor. The debtor proposes to limit the Class Ten creditor's secured claim to the current value of the property amounting to $245,000.00 and to treat its deficiency claim as unsecured as a Class Eleven creditor. The Debtor has proposed to re-amortize the amount of $245,000.00 constituting BAC's First lien on the Effective Date over thirty years at an annual rate of interest of 4.5 percent. All arrearages will be treated as unsecured claims including all fees and costs of the lender prior to plan confirmation. All other terms and conditions of the loan evidenced by Deed of trust and Note shall remain the same except as noted herein. If the Debtor and the Class Ten creditor cannot agree as to the amount and treatment of the Class Ten creditor's allowed secured claim, the Debtor may request that the Court determine the value of the creditor's interest in the Debtor's interest in the collateral which secures this creditor's claim including the amount of any attorney fees and costs the Class Ten creditor claims is due by debtor. The allowed secured claim of BAC shall be paid and secured by existing liens on the collateral as

follows:

        5.10.3.1.     The allowed secured claim shall reflect the amount of the secured portion of the claim and shall accrue interest from the Effective Date of the Plan at the rate set forth above pursuant to the terms of the Note and Deed of Trust not inconsistent with this Plan. The Class Ten creditor may not be entitled to any interest on its allowed secured claim from the Petition date to the Confirmation date.

        5.10.3.2.     The modified note [adjusted for the First Payment Date] shall be payable in equal monthly installments of principal and interest amortized over 30 years after being reduced by any payments made by Debtor post-petition. The first monthly installment, the First Payment Date, reflecting the new amount due shall be due 10 days after the Effective Date of the Plan and subsequent monthly installments shall be due on the same day of each subsequent month until paid.

        5.10.3.3.     The note of the Class Ten creditor shall continue to be secured by its current position lien on the collateral. No other security for payment of the allowed claim which creditor had at the Petition Date other than the lien above described which encumbers the collateral of creditor shall be retained post-confirmation.

        5.10.3.4.     The Debtor and the Class Ten creditor shall agree to execute such modifications to the existing note and deed of trust as are reasonably necessary to reflect the provisions of the plan treatment for this creditor, as determined by the Court.

5.11.    Class Eleven General Unsecured Claims, including Credit Cards and Real Property Deficiency Claims

       5.11.1. Classification: Class Eleven consists of all unsecured claims not otherwise classified in the Plan, all real property deficiency claims, and unsecured claims

1    against the debtor.

2        5.11.2. Impairment: Class Eleven is impaired.

3        5.11.3. Treatment: The Plan provides that each and every holder of a Class Eleven

4        allowed claim shall be paid pro rata their share of $188.38 per month paid by the

5        Debtor form his Projected Disposable Income amounting to $11,302.65 over the 60

6        month term of the Plan. Any liens held by the Class Eleven creditors shall be null

7        and void and removed as of the Effective Date. The first monthly installment, the

8        First Payment Date, reflecting the new amount due, shall be due 10 days after the

9        Effective Date of the Plan and subsequent monthly installments shall be due on the

10       same day of each subsequent month until paid.

11

12                              **SECTION VI**

13                          *Post-Confirmation Management*

14       The reorganized debtor intends to continue the real estate rental business in the same manner

15   as the Debtor has operated it. It is anticipated that the income generated from the business and the

16   Debtor's real estate and mortgage sales commissions should be sufficient to meet the plan payment

17   requirements.

18                              **SECTION VII**

19                      *Income Tax Consequences of Reorganization*

20       The Debtor has determined that the Plan can be executed without significant adverse tax

21   consequences.

22       7.1    *Disclaimer: The income tax consequences of the reorganization of the Debtor*

23   *pursuant to this Plan will be different and will depend upon the Debtor's tax situation. BREEN*

24   *OLSON & TRENTON, LLP, is not advising the Debtor regarding the tax consequences of the*

25   *reorganization of the Debtor and the Debtor will consult with its own tax advisor regarding the tax*

26   *consequences of the reorganization of the Debtor according to the Plan.*

27       7.2    Generally: The commencement of a bankruptcy case creates an estate, which

28   generally includes all legal or equitable interests in property of the debtor as of the commencement

of the case. There are certain exceptions. Exempt property and abandoned property are initially part of the bankruptcy estate, but are subsequently removed from the estate. Excluded property is never included in the estate.

When an individual files a bankruptcy petition under chapter 11, the bankruptcy estate is treated as a separate taxable entity from the debtor. The trustee or debtor-in-possession is responsible for preparing and filing the estate's tax returns and paying its taxes. The debtor remains responsible for filing his or her own returns and paying taxes on income that does not belong to the estate.

Before filing tax returns for the bankruptcy estate, the trustee or debtor-in-possession must obtain an employer identification number (EIN) for the estate. The trustee or debtor-in-possession uses the EIN on any tax returns filed for the estate, including estimated tax returns.

If the debtor is an individual in a chapter 11 bankruptcy, the debtor's individual income tax return does not include the income, deductions, or credits that belong to the bankruptcy estate. Also, the debtor's income tax return does not include any debts canceled because of bankruptcy. However, the bankruptcy estate must reduce certain losses, credits, and the basis in property (to the extent of these items) by the amount of canceled debt.

If the debtor is an individual in a chapter 11 case and the bankruptcy court dismisses the case, the estate is no longer treated as a separate taxable entity. The debtor is treated as if the bankruptcy petition was never filed. The debtor must file amended returns on Form 1040X to replace the returns previously filed for the bankruptcy estate. In that case, one includes on the amended returns the items of income, deductions, and credits that were reported by the bankruptcy estate on its returns and were not reported on returns the debtor previously filed.

### SECTION VIII

#### Feasibility

As a condition to confirmation of a plan of reorganization, § 1129(a)(11) requires that the confirmation is not likely to be followed by a liquidation or the need for further financial reorganization, except as proposed in such plan.

The Debtor sets out as **Exhibit E** its Anticipated Income and Expense and the Schedule of Sources and Uses of Cash. The Debtor's income detailed in these exhibits and the supporting documents demonstrate the income of the Debtor and show that the plan is feasible.

THE FINANCIAL PROJECTIONS SET FORTH IN THIS DISCLOSURE STATEMENT REPRESENT A PREDICTION OF FUTURE EVENTS BASED ON CERTAIN ASSUMPTIONS OF THE DEBTOR. ANTICIPATED FUTURE EVENTS MAY OR MAY NOT OCCUR AND THE PROJECTIONS MAY NOT BE RELIED UPON AS A GUARANTY OR OTHER ASSURANCE OF THE ACTUAL RESULTS WHICH WILL OCCUR. BECAUSE OF THE UNCERTAINTIES INHERENT IN PREDICTIONS OF FUTURE EVENTS, THE ACTUAL RESULTS OF OPERATIONS MAY WELL BE DIFFERENT FROM THOSE PREDICTED AND SUCH DIFFERENCES MAY BE MATERIAL AND ADVERSE.

THE FINANCIAL PROJECTIONS ARE INTENDED TO ASSESS THE FUTURE ASSETS, LIABILITIES, INCOME, AND CASH FLOW AVAILABLE FOR DEBT SERVICING AND ARE NOT DESIGNED OR INTENDED TO BE USED FOR PURPOSES OF PROJECTING THE FUTURE VALUE OF THE DEBTOR'S INTERESTS OR DEBENTURES ISSUED BY OR ON BEHALF OF THE REORGANIZED DEBTOR.

### SECTION IX

*Liquidation Analysis*

The Debtor's non-exempt assets are not in excess of the priority payments due on the taxes. In the Plan, the unsecured non-priority creditors are being paid $11,302.65, which is in excess of the Liquidation value of the estate shown in Exhibit C as $0.00.

As a result, it is the Debtor's opinion that all claimants are best served through implementation and effectuation of the Plan, which provides for a better return on their claims. Creditors and other interested parties are urged to review the debtor's schedules and statement of affairs as filed with the United States Bankruptcy Clerk's Office (and as amended from time to time) for purposes of confirming the debtor's conclusions contained in this liquidation analysis, attached hereto as **Exhibit C.**

## SECTION X

### Acceptance and Confirmation

10.1   <u>What is Necessary for Court Approval of a Plan</u>:

Chapter 11 of the Bankruptcy Code permits the readjustment of secured debt, unsecured debt, and equity interests. A Chapter 11 plan may provide less than full satisfaction of senior indebtedness and payment of junior indebtedness, and may even provide some return to equity owners absent full satisfaction of indebtedness, so long as no impaired class votes against the plan (except as provided below).

Even if an impaired class votes against the plan, implementation of the plan is still possible so long as the plan is fair and equitable and that class is afforded certain treatment defined by the Code. That certain treatment may be very broadly defined as giving a claimant the full value of his claim or interest. Such value is determined by the Court and balanced against the treatment afforded the dissenting class of creditors. If the latter is equal to or greater than the former, the Plan may be confirmed over the dissent of that class, depending upon the treatment of junior claims and interests. In particular, senior claims must be satisfied in full prior to payment of junior claims or interests, unless the holders of senior claims agree to different treatment. This principle, commonly known as the "absolute priority rule," applies only in cases when a class of unsecured claims or equity interests is impaired and does not accept the plan. In that event, the absolute priority rule does not apply to all classes of unsecured claims and equity interests, but only to the dissenting class and classes junior to the dissenting class. The exception to the absolute priority rule is that an existing debtor can contribute money or property which is: (1) new (fresh); (2) substantial; (3) necessary; and (4) not readily available from other sources or provide payments [in the case of an individual debtor] equal to the debtor's projected disposable income over the applicable commitment period. In the instant case the Debtor is an individual and is making payments in excess of his Projected Disposable Income.

In the event a class is unimpaired, it is automatically deemed to have accepted the plan. In

1  this proposed Plan, Classes Eight thru Eleven will be impaired, as defined in § 1124 of the Code, as
2  a result of the Plan.

3  The Code states that if there is no dissenting class, the test for approval by the Court of a
4  Chapter 11 plan (i.e., confirmation) is whether the plan is feasible and in the best interests of
5  creditors and interest holders. In simple terms, a plan is in the best interests of creditors and interest
6  holders if the plan will provide a better recovery to the creditors and interest holders than they
7  would obtain if the Debtor were liquidated and the proceeds distributed in accordance with
8  bankruptcy liquidation priorities. The Court, in considering this factor, need not consider any other
9  alternative to the plan but liquidation.

10  In considering "feasibility," as mentioned earlier, the Bankruptcy Court is only required to
11  determine whether the plan has a reasonable prospect of being accomplished. This entails
12  determining the availability of cash for payments required at the effective date, and any other factor,
13  which might make it impossible for the reorganized debtor to accomplish that which it proposes to
14  accomplish in the plan.

15  In addition, in order to confirm a plan, the Court must find that the plan was proposed in
16  good faith and that the plan and the debtor are in compliance with the applicable provisions of
17  Chapter 11. Finally, similar to the requirement that the Court find the plan to be feasible, the Court
18  must find that liquidation or further reorganization of the reorganized debtor is not likely to occur
19  after implementation of the plan.

20  The determination by the Court that a plan is fair, equitable, and feasible occurs at the
21  confirmation hearing after a plan has been accepted. The Court's judgment on these matter does not
22  constitute an expression of the Court's opinion as to whether the plan is a good one, nor does it
23  constitute an opinion by the Court regarding any debt or equity interest issued to creditors under the
24  plan.

25  10.2  Alternatives to the Plan:

26  Although this Disclosure Statement is intended to provide information to assist in the
27  formation of a judgment as to whether to vote for or against this proposed Plan, and although
28  creditors are not being offered through that vote an opportunity to express an opinion concerning

alternatives to the Plan, a brief reminder of the alternative to the Plan is necessary. This alternative includes the probable liquidation of the Debtor through conversion of the case to one under Chapter 7. The Debtor believes the Plan to be in the best interests of the creditors and the interest holders. In arriving at this conclusion, the Debtor emphasizes that the Debtor has liabilities in excess of the fair market value of its principal assets (refer to Debtor's schedules). Moreover, the assets available for liquidation are unlikely to yield what they are valued at in the plan but are still not sufficient to pay all of the priority debt. Consequently, the unsecured creditors of the debtor would likely receive no distributions under a Chapter 7 liquidation. THE DEBTOR HAS ATTEMPTED TO SET FORTH THE LIKELY LIQUIDATION ALTERNATIVE TO ITS PROPOSED PLAN. THE DEBTOR MUST CAUTION CREDITORS HOWEVER, THAT A VOTE MUST BE FOR OR AGAINST THE PLAN. THE VOTE ON THE PLAN DOES NOT INCLUDE A VOTE ON THE LIKELY LIQUIDATION ALTERNATIVE TO THE PLAN. THERE IS NO ASSURANCE THAT THE LIKELY LIQUIDATION ALTERNATIVE WILL, IN FACT, FOLLOW IF THE PLAN FAILS ACCEPTANCE. IF YOU BELIEVE THE LIQUIDATION ALTERNATIVE IS PREFERABLE TO THE PLAN AND YOU WISH TO URGE IT UPON THE COURT, YOU SHOULD CONSULT COUNSEL.

10.3   Specific Consideration in Voting:

All of the foregoing gives rise to the following implications and risks concerning the Plan. While the Plan provides for certain payments, such payments will apply only to allowed claims and certain interests. Under the Code, a claim may not be paid until it is "allowed." A claim will be allowed in the absence of an objection. A claim to which an objection has been filed will be heard by the Court at a regular evidentiary hearing and will be allowed in full, in part, or disallowed. While the Debtor will bear the principal responsibility for claim objections, any interested party may file claim objections. Accordingly, payment on all claims may be delayed until objections to such claims are ultimately settled.

10.4   Risk Factors:

For classes of claims, which do not receive cash on the Effective Date, there are certain risks inherent in accepting the Plan, including the absence of absolute certainty of ultimate payment. The

Case 2:12-bk-23477-SSC   Doc 33   Filed 02/01/13   Entered 02/01/13 17:03:43   Desc
Main Document      Page 30 of 34

Projected income may not be achieved, interest rates may increase, and mortgages may not be available.

10.5    Disclosure Required by the Code:

The Code requires disclosure of certain facts as follows:

1) there are no payments or promises made of the kind specified in § 1129(a)(4)(A) which have not previously been disclosed to the Court;

2) the ownership of the properties of the reorganized Debtor will remain with the Debtor and will not be affected by the Plan and management will remain with the debtor: and

3) the Debtors have no contractual relationship or sharing of profits or proceeds or ownership with any other parties. The Debtors are the exclusive owners of all of the assets listed, which include all of the assets of the Debtors.

## *SECTION XI*

*Other Provisions of the Plan*

11.1    Retention of Jurisdiction:

The Bankruptcy Court shall retain exclusive jurisdiction over this case to supervise the Plan, to hear, if applicable law provides, and to determine, among other things, the following matters:

1) any and all objections to the allowance of claims or interests except as provided in the Plan;

2) any and all applications for payment for fees from the Debtor made by attorneys and other professional pursuant to §§ 330 or 503, or for payment of any other fees or expenses authorized to be paid by the Debtor under § 327, and any objections thereto;

3) any and all pending applications for rejection, the assumption, or assignment, as the case may be of unexpired leases and executory contracts;

4) any and all motions, applications, adversary proceedings, and contested or litigated matters properly before the Bankruptcy Court;

5) modifications of this Plan;

6) all matters relating to the implementation or consummation of this Plan; and

7) any and all suits or actions brought for collection or recoupment of debts or other obligations owed by defaulted partners to the Debtor.

11.2    Default:

In the event of default by the Debtor in any payment required hereunder, the creditor shall have the right, after giving written notice to the Debtor and the Debtor failing to make the payment within 10 days, to any remedy available under applicable State and Federal law that the Creditor may be entitled to.

11.3    Discharge:

According to § 1141(d)(5)(a), upon completion of the payments required under the Plan, the Debtor shall be discharged from all obligations other than as reflected in the Plan; and according to § 1141(a), creditors shall be bound by the plan and execute such modifications to the existing liens or notes and deeds of trust as are reasonably necessary to reflect the provisions of the plan treatment as determined by the Court

11.4    Retention of Causes of Action:

The Debtor shall retain all claims or causes of action which it has as of the Confirmation Date, the powers of the debtor-in-possession for purposes of prosecuting claims and causes of action arising under the Bankruptcy Code, and full authority to pursue, compromise, and resolve all such claims and causes of action unless the Court has granted any such right to a creditor of this estate.

11.5    Retention or Rejection of Executory Contracts and Leases:

The Plan provides, pursuant to § 365, that the Debtor accepts all executory contracts and unexpired leases to which they are a party, except leases with landlords and any specifically provided for prior to the hearing on the Disclosure Statement.

11.6    Amendments to Plan:

The Plan may be altered, amended, or modified by the proponents before the Confirmation Date, in the manner provided for by § 1127 or otherwise provided for by law. The Plan may also be altered, amended, or modified by the proponents after the Effective Date in accordance with the

Case 2:12-bk-23477-SSC    Doc 33    Filed 02/01/13    Entered 02/01/13 17:03:43    Desc
Main Document    Page 32 of 34

Code and applicable law. A holder of a claim or interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as modified unless the modification detrimentally effects the holder of such claim or interest without the prior consent thereof.

11.7   Offer, Issuance and Resale of Plan Securities:

No securities will be issued by the Debtor.

11.8   Provision for Filing Reports and Payments of Fees to the Office of the United States Trustee:

The Debtor shall timely file all quarterly reports and post-confirmation reports and shall pay all fees to the United States Trustee as required by law and will incorporate such language into the order confirming the Debtor's Plan of Reorganization. This paragraph includes the requirements under § 1129(a)(12) and 28 U.S.C. § 1930(a)(6).

11.9   Commencement:

Commencement of the Plan shall occur upon the funding on the Effective Date and commencement of disbursements to Class One through Class Eleven as provided in the Plan.

## SECTION XII

### Recommendation of Debtor

The Debtor recommends that the Plan of Reorganization be approved in light of the alternative that only secured creditors in first position are likely to be paid a significant portion of their claim. The Debtor is of the opinion that the Plan approval is in the best interest of all creditors.

## CONCLUSION

The materials provided in this Disclosure Statement are intended to assist you in voting on the Plan in an informed fashion. If the Plan is confirmed, you will be bound by its terms. Therefore, you are urged to review this material in order to make an informed vote on the Plan.

Page **33** of **34**
Case 2:12-bk-23477-SSC    Doc 33   Filed 02/01/13   Entered 02/01/13 17:03:43   Desc
Main Document    Page 33 of 34

Dated FEBRUARY 1, 2013.

BREEN OLSON & TRENTON, LLP

_John E Olson_

John E Olson, Esq.
*Attorney for Debtor*

Original filed this 1st day of February,
2013, with:

Clerk of the United States Bankruptcy Court
230 N. 1st Avenue, Ste. 101
Phoenix, AZ 85003

and

A copy of the foregoing mailed this 1st day
of February, 2013, via First Class Mail with
sufficient postage thereon fully prepaid to:

United States Trustee
District of Arizona
230 N. 1st Avenue, Ste. 204
Phoenix, AZ 85003-1706

_John E. Olson_

John E. Olson